## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ASHISH SINGH NEGI** | ) | |
| **1904 N. 7th Street** | ) | **COMPLAINT IN THE** |
| **Broken Arrow, OK 74012** | ) | **NATURE OF MANDAMUS** |
| **(USCIS FILE NO.: A088-695-852)** | ) | **UNDER 28 U.S.C. §1361** |
| | ) | **AND UNDER THE APA** |
| **Plaintiff,** | ) | **§§§§ 702, 704, 706(1), 555.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LEON RODRIGUEZ, Director** | ) | **CIVIL ACTION NO.** |
| **U.S. Citizenship and Immigration** | ) | |
| **Services, in his official capacity,** | ) | |
| **as well as his successors and assigns,** | ) | |
| **20 Massachusetts Avenue, NW** | ) | **JUDGE** |
| **Washington, DC  20529** | ) | |
| **Defendant.** | ) | |

_____

## I.    INTRODUCTION

**1.**      This is a civil action brought to compel the Defendant and those acting under him

to adjudicate Plaintiff Ashish Negi's Application to Register Permanent

Residence or Adjust Status (Form I-485) in accordance with the Immigration and

Nationality Act ("INA") and its implementing regulations.  Plaintiff Negi's

Application to Register Permanent Residence or Adjust Status (colloquially

known as a "green card" application) was filed on or about November 1, 2011 and

has remained pending since that date.  As the Defendant has failed to undertake a

mandatory duty to render a decision on the application for U.S. permanent

residence after an extreme delay, the Plaintiff seeks a writ of mandamus from this

Honorable Court compelling the Defendant to adjudicate the application for

permanent residence.  28 U.S.C. §1361.  Further, the Plaintiff seeks to compel the

adjudication of his application for permanent residence pursuant to the

Administrative Procedures Act (APA) because Defendant has "unlawfully

withheld or unreasonably delayed" adjudicating the application. 5 U.S.C. §706(1).

This case is particularly urgent because the Plaintiff's priority date for his

immigrant visa that is currently current, thus allowing him to adjust status, is

likely to retrograde in the coming months, which would cause further undue delay

for him acquiring lawful permanent residency.


## II.        JURISDICTION AND VENUE

2.       The jurisdiction of this Court is invoked pursuant to Federal Question Statute, 28

U.S.C. §1331, and Mandamus Statute, 28 U.S.C. §1361.  This action is filed in

response to unreasonable agency delay and unlawful failure to act on the

Plaintiff's Application to Register Permanent Residence or Adjust Status (Form I-

485) in violation of the APA, 5 U.S.C. § 555(b), § 702 & § 706(1), as well as the

failure to perform the mandatory duty to adjudicate the application after an

extreme delay, 28 U.S.C. § 1361.

3.       Venue is properly with this Court because the Defendant, Leon Rodriguez,

Director of USCIS[1], resides within this jurisdiction in his official capacity and a

substantial portion of the events or omissions giving rise to the claim occurred in

this jurisdiction.  Therefore, venue is proper under 28 U.S.C. §1391(e)(1) and (2).

---

[1] Through the Homeland Security Act of 2002, Public Law 107-296, the responsibilities of the former Immigration and Naturalization Service (INS) were transferred to a new agency, the U.S. Department of Homeland Security (DHS). Through this action, the Bureau of Citizenship and Immigration Services (BCIS) was formed under the umbrella of the DHS and entrusted with overseeing the application process for immigration, asylum, naturalization, and other related immigration benefits. BCIS was subsequently renamed "U.S. Citizenship and Immigration Services" (USCIS) through an October 13, 2004 notice in the Federal Register.

4.      Plaintiff Negi is an adult native and citizen of India who has resided in the U.S.

        since August of 2003. Plaintiff Negi currently resides at 1904 N. 7th Street,

        Broken Arrow, Oklahoma 74012.

5.      Defendant Leon Rodriguez is the Director of U.S. Citizenship and Immigration

        Services (USCIS) and is sued only in his official capacity, as well as his

        successors and assigns.  USCIS is headquartered at 20 Massachusetts Avenue,

        N.W., Washington, D.C. 20529.  USCIS is required to adjudicate applications for

        permanent residence under the Immigration and Nationality Act (INA).

### III.    BACKGROUND

6.      Plaintiff has waited more than 34 months for USCIS to decide his application for

        U.S. permanent residence filed pursuant to 8 U.S.C. § 1255(a), INA § 245(a).

        Exhibit 1 (I-485 Receipt Notice).  Plaintiff Negi was eligible for adjustment of

        status at the time of filing his application, and he remains fully eligible for

        adjustment of status to permanent residence at this time pursuant to 8 U.S.C. §

        1255(a), INA § 245(a).

7.      There are 140,000 permanent employment-based immigrant visas available each

        year, and these are divided into five preference categories, each subject to

        numerical limitations. 8 U.S.C. § 1151 & § 1153(b), INA § 201(d) & § 203(b).

        The preference categories are intended to reflect U.S. economic priorities, with

        individuals that qualify for the first preference ranked as the highest economic

        priority, and those in the fifth as the lowest priority.[2]

---

[2] Ruth Ellen Wasem, "Numerical Limits on Employment-Based Immigration: Analysis of the Per-Country Ceilings," Congressional Research Service (December 6, 2011) - http://fas.org/sgp/crs/homesec/R42048.pdf

8.      In addition to the numerical limits placed upon the various immigration preference categories, the INA also places a limit on how many immigrants may come to the United States from any given country each year. Currently, no group of permanent immigrants (family-based and employment-based) from a single country may exceed 7% of the total population immigrating to the United States in a single year. 8 U.S.C. § 1153(c)(1)(E)(v), INA § 203(c)(1)(E)(v).

9.      The result is that there is often a waiting period of several years before an intending immigrant becomes eligible for permanent residence. This wait is often far longer for Indian nationals, as Indians are the largest group of intending immigrants to the U.S. according to recent data.[3]

10.     The process to obtain Mr. Negi's permanent residence under the second preference category designated for professionals holding an advanced degree or aliens of exceptional ability, 8 U.S.C. §1153(b)(2), INA §203(b)(2), began on August 2, 2007, which is his priority date for U.S. immigration purposes.  Exhibit 2 (Form I-140 Approval Notice).

11.     After waiting more than five years for his priority date to become current, Mr. Negi became eligible for permanent residence in November of 2011, and he filed an Application to Register Permanent Residence or Adjust Status (Form I-485) pursuant to 8 U.S.C. § 1255(a), INA § 245(a), on November 1, 2011. Exhibit 1 (From I-485 Receipt); Exhibit 3 (Visa Bulletin). He is also currently eligible for permanent residence and his application satisfies all statutory requirements as the priority date remains current.

---

[3] Ibid.

12.   The relevant statute, 8 U.S.C. § 1255(a), INA § 245(a), provides for the adjustment of status to permanent residence of an alien who is inspected and admitted or paroled into the United States if:  (1) the alien makes an application for such adjustment; (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and, (3) an immigrant visa is immediately available to him at the time his application is filed.  Plaintiff Negi meets all of these criteria.

13.   First, Plaintiff Negi applied for adjustment of status to permanent residence on or about November 1, 2011.  Exhibit 1 (I-485 Receipt Notice).

14.   Second, Plaintiff Negi is admissible to the United States and he is not subject to any bars to his eligibility for permanent residence.  Plaintiff Negi is currently lawfully present in the United States and, prior to his application, he maintained lawful nonimmigrant status. Exhibit 7 (Approval Notices for nonimmigrant status and employment authorization).

15.    Third, Plaintiff Negi is the beneficiary of an approved Immigrant Petition for Alien Worker (Form I-140) that earned his classification as an alien who is a member of a profession holding an advanced degree or an alien of exceptional ability.  8 U.S.C. §1153(b)(2), INA §203(b)(2). Exhibit 2 (I-140 Approval Notice).  The immigrant petition carries with it a priority date of August 2, 2007 and remains current according to both the September and October U.S. Department of State Visa Bulletins. Exhibit 2 and Exhibit 3 (Visa Bulletins). Plaintiff Negi, who is subject to the per country visa limitations on Indian

nationals in the second preference category, has a visa immediately available to
him. Id.

16.  Plaintiff Negi has made periodic inquiries with USCIS to ascertain the status of
his long-pending Application to Register Permanent Residence or Adjust Status
(Form I-485), both himself and through counsel.  Exhibits 4 & 5 (Inquires and
Responses).

17.  On July 14, 2014, Plaintiff, through counsel, requested adjudication of Plaintiff's
permanent residence application.  Through a letter dated July 29, 2014, USCIS
acknowledged that the processing of Plaintiff Negi's permanent residence
application has been "outside of normal processing times."  Exhibit 4 (Counsel's
Inquiries and USCIS' Responses).   In that response, USCIS states:

> our records show that your I-485 is currently pending adjudication.
> We regret that we are unable to provide you with a completion date
> at this time.  We apologize for this delay.  We hope this
> information is helpful to you.  Exhibit 4 (Counsel's Inquiries and
> USCIS' Responses).

18.  Using the follow-up email address for USCIS Headquarters that the agency has
dedicated for unresolved adjudications (SCOPSSCATA@dhs.gov), the Plaintiff,
through counsel, sought resolution on August 21 and 27 of 2014.  Exhibit 4
(Counsel's Inquiries and USCIS' Responses).  Through a boilerplate response
dated September 5, 2014 emailed to counsel's paralegal, Laura Huang-Tam,
USCIS did not specify the cause for the continued delay. Instead, USCIS
Headquarters maintained that the case is under "review" and that the agency is
"unable to determine at this time when the review process will be completed."  Id.

19.    Plaintiff Negi has separately sought the assistance of both his congressman and the USCIS Ombudsman.  Exhibit 5 (Plaintiff Negi's Inquiries and USCIS' Responses)

20.    Plaintiff Negi sought the assistance of Congressman James "Jim" Bridenstine of the First District of Oklahoma to act as a liaison with USCIS.  Exhibit 5 (Plaintiff Negi's Inquiries and USCIS' Responses).  Congressman Bridenstine's Constituent Services Coordinator Sandra Minardi has contacted USCIS on Plaintiff's behalf on several occasions to ascertain the cause of USCIS' continued delay. Id.

21.    Through an email dated August 29, 2014, Ms. Minardi conveyed a response she received from the agency to Plaintiff Negi.  Id.  The response, which contains nearly identical boilerplate language as USCIS' September 5, 2014 correspondence, references an oblique "review process," indicating that the agency is "unable to determine at this time when the review process for the I-485 application will be completed." Id.

22.    Plaintiff Negi further contacted the USCIS Ombudsman's service in 2014. Exhibit 5. Created by Section 452 of the Homeland Security Act of 2002, the Ombudsman is intended to be an impartial and confidential resource which provides case assistance in order to attempt to resolve adjudicatory issues. Through a September 11, 2014 response, USCIS indicated to the Ombudsman that Plaintiff Negi's application was being reviewed, but again, would not "provide a specific timeframe for resolution of the case."  Id.

23.    The Defendant's open ended delay in adjudicating the permanent residence

application, which has been pending for more than 34 months, is unreasonable in

relationship to:  (1) Defendant's posted standard processing time for like

applications; (2) the substantial hardship visited upon Plaintiff Negi, an immigrant

who has remained lawfully present in the U.S. since entry; and, (3) the agency's

failure to comply with the "withholding adjudication" provision of 8 C.F.R.

§103.2(b)(18).

24.    First, according to USCIS' posted standard processing dates, as of September 19,

2014, the Texas Service Center was routinely adjudicating applications to adjust

status that were filed on March 3, 2014.  Exhibit 6 (USCIS Processing Time

Information).  Therefore, Applications to Adjust Status (Form I-485), such as

Plaintiff Negi's, are typically adjudicated at the Texas Service Center in

approximately six months.  By that standard processing measure, Plaintiff Negi's

application has been pending for nearly 28 months beyond standard processing

times.

25.    Further, the delay is unreasonable in relation to the hardship that is inflicted on

Plaintiff as a result of USCIS' inaction.

26.    Plaintiff Negi is a lawful immigrant who has made all affirmative efforts to obey

the U.S. immigration laws.  Exhibit 7 (Approval Notices).  Despite his consistent

compliance with arduous statutory and regulatory requirements, for which he

enlisted the services of costly legal professionals, Defendant has failed to provide

him timely action resulting in his need to apply for travel and work authorization

on a yearly basis at substantial financial hardship.

27.     In addition to the financial costs implicated in Defendants' inaction, there are substantial opportunity costs attendant to delay. U.S. permanent residence provides immigrants innumerable benefits including eligibility for certain employment, the ability to sponsor family members for immigration, 8 U.S.C §1153(a)(2), INA §203(a)(2), the opportunity to apply for U.S. citizenship after five years of residence, 8 U.S.C. §1427(a), INA §316(a), eligibility to receive paid-in social security benefits, and many others. The deprivation of the ability to obtain these statutory rights is a significant hardship to Plaintiff Negi.

28.     Additionally, USCIS has failed to provide coherent justification for their delay, including assurances of their compliance with the regulatory criteria found in 8 C.F.R. §103.2(b)(18) which requires periodic review of adjudications held in abeyance for more than a year.

29.     The resulting uncertainty concerning Plaintiff Negi's immigration status visits immense psychic and emotional hardship on the Plaintiff.

30.     Thus, the adjudication of the Plaintiff's application for permanent residence has been unreasonably delayed *vis a vis* similarly situated individuals and this open-ended delay has resulted in substantial financial, emotional and opportunity costs for the Plaintiff.

## IV.     STATUTORY AND REGULATORY FRAMEWORK

31.     The APA provides for judicial review for a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. §702.

32. Under the APA, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

33. The term "agency action" is defined to include an agency's "failure to act." 5 U.S.C. §701(b)(2) and 5 U.S.C. §551(13).

34. The APA enables the Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1).

35. U.S. agencies are directed under the APA to "proceed to conclude a matter presented" "within a reasonable time." 5 U.S.C. §555(b).

36. Mandamus is a remedy available to compel an officer or employee of a U.S. agency to perform a duty owed to a plaintiff.  28 U.S.C. §1361.

## V.  CLAIM FOR RELIEF

### Count One:  Unreasonable Delay under the APA

37. USCIS has unreasonably delayed adjudicating Plaintiff Negi's Application to Register Permanent Residence or Adjust Status (Form I-485) filed more than 34 months ago, thereby depriving Plaintiff of the opportunity to be conferred with the rights and benefits attendant to U.S. permanent residence.

38. Judicial review of "agency action" including an agency's "failure to act" is appropriate where a plaintiff is "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. §702, §701(b)(2). Similarly, "agency action" including an agency's "failure to act" becomes "reviewable" where "there is no other adequate remedy in a court." 5 U.S.C. §704, §701(b)(2).

39. The APA explicitly provides that the scope of such judicial review includes "compel[ling] agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1). Moreover, the agency is required under the APA to "proceed to conclude a matter presented" "within a reasonable time." 5 U.S.C. § 555(b).

40. While the APA precludes judicial review of "agency action [that] is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), leading interpretations of the adjustment of status to permanent residence statute, 8 U.S.C. § 1255(a), INA § 245(a), including a published opinion from the federal district court in this district, provide that while the agency is vested with discretionary decision making authority concerning the content of the adjudication, USCIS does not have the discretion to refuse adjudication or withhold adjudication indefinitely. See Liu v. Novak, 509 F. Supp. 2d 1, 6-10 (D.D.C. 2007); also see Tang v. Chertoff, 493 F. Supp. 2d 148, 1158 (D. Mass. 2007) ("The [US]CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely.") (quoting Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004)).

41. Thus, this Court has jurisdiction over the matter under the APA and Federal Question Statute, 28 U.S.C. §1331, and Plaintiff asks the Court to find that a 34-month adjudicatory period is unreasonable under the circumstances.

42. In Telecomms. Research & Action Ctr. (TRAC) v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984), the Court of Appeals for the D.C. Circuit identified six factors for determining whether agency action has been unreasonably delayed. These factors include:

1. The decision making period is governed by the "rule of reason;"
2. Where Congress has provided a timetable or other indication of the time of action, that timeframe may supply content for the rule for the reason;
3. Where human health and welfare is at issue, delay is less tolerable than in the context of economic regulation;
4. The effect of expediting delayed action on other agency priorities;
5. The nature and extent of interest prejudiced by delay; and
6. There is no requirement of government impropriety. Id.

43.   All six factors militate heavily towards judicial intervention.

44.   As stated, USCIS' standard processing times for permanent residence applications is approximately six months.  Exhibit 6 (USCIS' Processing Time Information). Moreover, the regulations at 8 C.F.R. §103.2(b)(18) further imply that a one year investigatory period is presumptively reasonable, but that further delay beyond one year must be justified through a considered and structured review process.

45.   Specifically, the regulation at 8 C.F.R. §103.2(b)(18) authorizes USCIS to withhold adjudication of an adjustment of status application for a one-year period if "an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the benefit request, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the benefit request would prejudice the ongoing investigation."

46.   However, "if an investigation has been undertaken and has not been completed within one year of its inception" the same regulation requires USCIS to "review the matter and determine whether adjudication of the benefit request should be held in abeyance for six months or until the investigation is completed, whichever comes sooner." 8 C.F.R. §103.2(b)(18).  The regulation further provides that after

the six months abeyance period, USCIS must review the matter to determine if "more time is needed to complete the investigation." Id.

47.  Thus, the regulations at 8 C.F.R. §103.2(b)(18) imply that a one year investigatory period is presumptively reasonable, but thereafter, specific review procedures must take place in order to continue to hold an adjudication in abeyance. Absent a showing that these review procedures are being undertaken, beyond one year such an investigation is presumptively unreasonable. Thus, the one year investigatory period informs the rule of reason.

48.  By that measure, Plaintiff Negi's application has been pending more than 20 months beyond the rule of reason.

49.  The delay at issue is in the sphere of the applicant's welfare and is noneconomic.

50.  The applicant is requesting action on a single application for U.S. permanent residence which has been pending for more than 34 months.  The adjudication of Plaintiff's application within this timeframe does not require the agency to shift its priorities or resources.

51.  U.S. permanent residence carries with it substantial benefits and these interests are prejudiced by continued delay.  U.S. permanent residents are subject to separate provisions and are provided more strident protections from their removal, they are free to obtain employment with various employers, they may bring family members to the U.S. as permanent residents and may receive paid-in social security benefits, as well as financial and tax benefits.  Additionally, while withholding the Plaintiff's permanent residence, USCIS is delaying Plaintiff

Negi's ability to apply for U.S. citizenship, which requires five years of continuous permanent residence in the U.S.

52.    Finally, the adjudication of the instant petition will provide intangible psychic benefits such as the end to prolonged periods of uncertainty and a permanent home in the U.S.

53.    Under these circumstances with all relevant TRAC factors militating strongly towards judicial intervention, USCIS should be compelled to act.

**Count Two:  Federal Mandamus Act**

54.    The original jurisdiction of this Court is invoked pursuant to the Mandamus Statute, 28 U.S.C. §1361, which enables this action "to compel" the Director of USCIS and his assigns to "perform a duty owed to the plaintiff."

55.    Mandamus is a remedy to be employed in extraordinary circumstances where: "(1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy." Kerr v. U.S. Dist. Court for N. Dist. of Cal., 426 U.S. 394, 402 (1976).

56.    Plaintiff Negi has a clear right to action on his permanent residence application filed with USCIS. The Application to Register Permanent Residence or Adjust Status (Form I-485) that he filed pursuant to 8 U.S.C. § 1255(a), INA § 245, meets all eligibility requirements.

57.    USCIS, which is tasked with applying the U.S. immigration laws, has a clear,

non-discretionary duty to act on applications for immigration benefits filed with

the agency.  The agency, which required an application fee of $1,070.00, is

obligated to make a decision on the application and cannot accept the filing with

associated fee and refuse to take action.  For this reason, several federal district

courts have held that while USCIS has the discretion to grant or deny an

application for adjustment of status, the agency does not have the discretion to

simply refuse adjudication.  Nigmadzhanov v. Mueller, 550 F. Supp. 2d 540, 546

(S.D.N.Y. 2008); Cao v. Upchurch, 496 F.Supp.2d 569, 575-76 (E.D. Jul. 16,

2007); Razik v. Perryman, No. 02-5189, 2003 U.S. Dist. LEXIS 13818, 6-7 (N.D.

Ill. Aug. 6, 2003); Iddir v. INS, 301 F.3d 492, 499 (7th Cir. 2002); Paunescu v.

INS, 76 F.Supp.2d 896, 899-902 (N.D.Ill. 1999).

58.    Finally, Plaintiff Negi, as demonstrated by the record, has no other adequate

remedy. Exhibits 4 & 5 (Inquiries and USCIS' Responses).   Plaintiff Negi has

both independently and through counsel worked within the parameters of USCIS'

inquiry system, escalating the case to USCIS' Headquarters.  Id.  USCIS'

Headquarters has refused to take action citing an oblique "review process" with

no timetable for the completion of the claimed review process.  Id.  There are no

other procedural or legal mechanisms through which the Plaintiff may attain an

adequate remedy.  Thus, mandamus jurisdiction inures.

59.    As noted above in ¶¶ 33 through 44, the TRAC factors are applied within the

jurisdiction of the Court of Appeals for the D.C. Circuit to determine where

agency action has been unreasonably delayed.  The same framework militates

heavily in favor that the 34 month adjudicatory period is unreasonable.

60.     Under these circumstances, USCIS should be compelled to act under the

mandamus statute.

WHEREFORE, Plaintiff prays that the Court:

(1)     Compel Defendant and those acting under Defendant to adjudicate

Plaintiff Ashish Negi's Application to Register Permanent Residence or

Adjust Status (Form I-485) filed pursuant to 8 U.S.C. § 1255(a), INA §

245(a);

(2)     Grant other and further relief as the Court deems proper under the

circumstances; and

(3)     Grant attorney's fees and costs of court.

Respectfully submitted,


_____/s/_____
Thomas A. Elliot, Esquire
Lichtman & Elliot, P.C.
1666 Connecticut Avenue, NW
Suite 500
Washington, DC  20009-1039
Phone:  (202) 429-1725
Fax:  (202) 452-0161
D.C. Bar #  259713


Dated:  October 9, 2014